IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID LESLIE CARD, ) | |
| ) | |
| Petitioner, ) | Case No. CV 93-0030-S-EJL |
| ) | |
| v. ) | **CAPITAL CASE** |
| ) | |
| A.J. ARAVE, Warden, ) | **MEMORANDUM ORDER** |
| ) | |
| Respondent. ) | |
| _____ ) | |

This Court previously denied with prejudice Petitioner's request for an evidentiary hearing in this capital habeas matter on all claims except Claims 1, 5, 11, and 18.  (Docket No. 257.)  The Court found good cause for a period of limited discovery and, at the close of that period, Petitioner submitted an offer of proof in support of his request for a hearing.  (Docket No. 257, p. 13; Docket No. 265, pp. 4-5.)  The Court has reviewed this material and, for the reasons that follow, has determined that an evidentiary hearing will be held on Claims 1, 5, 11, and portions of Claim 18.

**I.**

**STANDARD OF LAW**

An evidentiary hearing is mandatory in a habeas case when the following two conditions have been satisfied:  (1) the petitioner has presented a "colorable" claim on the merits, meaning he has alleged specific facts that, if proven to be true, would entitle him to habeas relief, and (2) the state court trier of fact has not reliably found the relevant

**MEMORANDUM ORDER - 1**

facts after a full and fair hearing. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992); *Townsend v. Sain*, 372 U.S. 293 (1963). A federal court also retains the discretion to conduct an evidentiary hearing when it is not otherwise mandatory. *Seidel v. Merkle*, 146 F.3d 750, 754 (9th Cir. 1998).

## II.

## COMPETENCY CLAIMS

In Claim 1, Petitioner raises a claim that he was incompetent to be tried or sentenced. The Court previously determined that the trial aspect of this claim was procedurally defaulted (along with related Claim 11), but that Petitioner had shown sufficient cause for the default. The Court further determined that Petitioner would be permitted to develop evidence of actual prejudice to excuse the default at an evidentiary hearing. (Docket No. 234, p. 15.)

Respondent has since argued that Petitioner's reliance on a retrospective competency opinion by a mental health expert and trial counsel's "bare and conclusory" opinion does not create a genuine issue of material fact given the strong evidence of Petitioner's competency in the state court record. (Docket No. 248, pp. 14-17.) The Court indicated that it was inclined to take a second look at this matter after Petitioner had presented a supplemental report from his mental health expert, which he has now done. Petitioner has also developed and submitted more detailed facts from his trial counsel regarding his opinion. The Court has reviewed this evidence, and while the issue is close, the Court reaffirms that Petitioner has sufficiently called into doubt his capacity to assist

**MEMORANDUM ORDER - 2**

rationally in his defense to be entitled to develop the facts at an evidentiary hearing. *See Williams v. Woodford*, 384 F.3d 567, 608 (9th Cir. 2004) (noting that although retrospective expert opinions are generally disfavored, trial counsel's opinion may be "especially relevant") (citations omitted).[1]

### III.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner was represented throughout the state court proceedings by the Canyon County Public Defender, Van Bishop. In Claim 18, Petitioner contends that Bishop was constitutionally ineffective in several respects at trial and sentencing.

The Court has excused Petitioner's failure to develop these allegations in state court based upon the procedural similarity between this case and *Hoffman v. Arave*, 236 F.3d 523 (9th Cir. 2001). Petitioner is therefore entitled to an evidentiary hearing if he can establish a colorable basis for relief. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005). In other words, Petitioner must allege specific facts that, if true, would show both that trial counsel's performance was objectively unreasonable, measured under prevailing professional norms, and that the defense was prejudiced as a result. *Strickland v.*

---

[1] The Court notes, however, that Petitioner's burden will likely be heavy. Setting aside complicated issues related to the level of "prejudice" that Petitioner would be required to show to excuse any defaulted claim, a state court's competency determination is generally considered to be a factual finding that is entitled to a presumption of correctness in a federal habeas proceeding. *See Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983); *see also Demosthenes v. Baal*, 495 U.S. 731, 735 (1990). Absent a flaw in the state court's factfinding process, this presumption is rebutted only upon a showing of convincing evidence.

**MEMORANDUM ORDER - 3**

*Washington*, 466 U.S. 668, 684 (1984). To show prejudice, Petitioner must be able to demonstrate that there is a reasonable probability of a different outcome had counsel not erred. *Id*. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

    A.    <u>Guilt Phase</u>

Because the Court has already concluded that Petitioner will be permitted to develop evidence related to his competency claims, the scope of the hearing shall also include Petitioner's claim that Bishop was ineffective in failing to investigate and raise competency issues adequately in the state trial court (Claims 18(b)&(d)). Aside from those matters, Petitioner is not entitled to a hearing on any other allegations of ineffective assistance during the guilt phase of this case.

    1.    <u>Failure to Seek a Plea Bargain – Claim 18(o)</u>

Van Bishop testified at his deposition that the prosecutor in this case would not negotiate for a lesser charge and, consequently, that Petitioner would have been required to either plead guilty as charged or go to trial. (Bishop Depo., p. 67.) He also claimed that Petitioner consistently maintained his innocence and would not have pled guilty had the opportunity arose. (Bishop Depo., p. 75.) Because Petitioner has not demonstrated that a plea bargain was available or that he would have pled guilty, this claim is not colorable. *See Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) (rejecting similar claim).

**MEMORANDUM ORDER - 4**

2.  Motions to Suppress – Claim 18(p)(q)(r)

Petitioner asserts that Bishop should have filed motions to suppress Petitioner's statements to police officers, evidence seized from his backpack around the time of his arrest, and evidence discovered during a search of his residence. This claim is also not colorable.

The state court record contains Petitioner's signed consent to search his backpack and a signed waiver of his *Miranda* rights. (State's Lodging A-1, pp. 193-96.) Though Petitioner suggests that he lacked the mental capacity to waive his rights voluntarily, there is no indication of police coercion, a necessary prerequisite to a finding of involuntariness. *Colorado v. Connelly*, 479 U.S. 157, 165-71 (1986). It also appears that the search of Petitioner's backpack and the seizure of the handgun therein would have been supported under the doctrine of inevitable discovery, as the police had probable cause by that time to arrest Petitioner and search his backpack. Finally, the search of Petitioner's residence was conducted pursuant to a search warrant, and Petitioner has failed to allege how the warrant was lacking in probable cause or was otherwise defective.

Trial counsel is under no duty to file motions that have no chance of success, *see United States v. Quinterro-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1996), and Bishop correctly noted during his deposition Petitioner has shown no meritorious basis to support the filing of any motions to suppress. (Bishop Depo. pp. 8-81.)

**MEMORANDUM ORDER - 5**

3.     Inconsistent Defenses – Claim 18(c)

In this claim, Petitioner alleges that Bishop should not have deferred to Petitioner's demand that the theory of defense include his factual innocence, which he now contends was inconsistent with the defense of lack of intent due to mental illness. This claim does not require a hearing to resolve.[2]

Contrary to Petitioner's argument, Bishop did not present a true alibi defense but instead attempted instead to show that reasonable doubt existed regarding the State's evidence identifying Petitioner as the shooter. (Tr., Vol. IV, pp. 679-695.) Though perhaps not ideal, there is nothing directly inconsistent about putting the State to its burden to prove the identity of the perpetrator beyond a reasonable doubt while also claiming that Petitioner suffered from a mental disease or defect that rendered him incapable of forming the mental state required to be guilty of murder. And, as other courts have acknowledged, defense theories may be presented in the alternative or even inconsistently without necessarily violating the Sixth Amendment. *See Singleton v. Lockhart*, 871 F.2d 1395 (8th Cir. 1989) (counsel in capital case was not ineffective for arguing factual innocence and the applicability of a lesser-included offense); *Hunt v. Nuth*, 57 F.3d 1327 (4th Cir. 1995) (counsel in capital case was not ineffective for arguing both factual innocence and lack of deliberation due to intoxication).

---

[2] To the extent that Petitioner contends that counsel allowed him to make other "inappropriate trial decisions," *see* Docket No. 69, p. 45, he has not indicated what those decisions were.

**MEMORANDUM ORDER - 6**

Even if Bishop's selection of the defense theory fell below an objective standard of reasonableness, Petitioner has not alleged sufficient facts to support a finding of *Strickland* prejudice. Petitioner has not come forward with the precise nature of the type of defense that he now wishes Bishop would have presented, though presumably he believes that it should have been based solely upon his mental condition. But despite hearing expert testimony on this issue, the jury rejected Petitioner's claim that his mental illness prevented him from forming the mental state necessary to commit first-degree murder. Petitioner has not indicated how the elimination of the innocence portion of the defense, leaving only a unified mental health defense, could have resulted in a different verdict.

### 4. Impeachment of James Jackson at Trial

As part of his offer of proof, Petitioner has submitted a declaration from attorney Sean O'Brien, who apparently serves as a "*Strickland* expert" on effective assistance of counsel in capital cases. (Docket No. 275.) Mr. O'Brien believes that one of Bishop's shortcomings was his failure to impeach the trial testimony of State's witness James Jackson, who testified that Petitioner made incriminating statements to him while they were both at the Idaho Secure Medical Facility.

Petitioner has not included this allegation as a basis for relief in his Second Amended Petition, and he has not requested leave to amend the Petition. It also does not appear that Petitioner developed specific facts during the recent period of discovery regarding counsel's decision-making related to Jackson's testimony. To the extent that

**MEMORANDUM ORDER - 7**

Petitioner is seeking an evidentiary hearing to prove this allegation, then, the Court will deny the request on these grounds. In any case, the Court finds that this is not a colorable claim.

Before trial, Bishop filed a motion to compel the State to disclose information on Jackson's criminal record. (R., Vol. II, p. 467.) At a hearing on the motion, Bishop indicated that the State had essentially provided that information to the defense. (State's Exhibit A-15, pp. 2-3.) In addition, Bishop also filed motions to require Jackson to undergo mental health and polygraph examinations, to allow defense counsel access to his prison file, and to suppress Petitioner's statements to Jackson, but those requests were denied by the trial court. (R. Vol. II, p. 472; State's Exhibit A-15, p. 15.)

At trial, the jury was informed that Jackson was in prison on charges of assault and lewd and lascivious conduct. (Tr., Vol. II, p. 400.) He also admitted that he was at the Idaho Secure Medical Facility for a mental evaluation for "post-delayed stress." (Tr. Vol. II, p. 400.) During his cross-examination, Bishop chose to elicit some of the more bizarre aspects of Petitioner's purported statements to Jackson in an apparent effort to show that Petitioner was mentally ill. (Tr., Vol. II, pp. 414- 23; Tr. Vol. IV, pp. 691-92.) Petitioner now alleges (through O'Brien's declaration) that Bishop should have also impeached Jackson with the details of his child molestation conviction, and that Bishop should have exposed Jackson's exaggeration about the extent of his involvement in the Vietnam War and his claim that he suffered from post-traumatic stress disorder.

**MEMORANDUM ORDER - 8**

The manner in which an attorney chooses to cross-examine an adverse witness is a tactical decision. *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference"); *Silva v. Woodford*, 279 F.3d 825, 852 (9th Cir. 2002); *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002). A reviewing court should not second-guess such a decision, unless the petitioner can show that trial counsel acted outside of the wide range of professional competence and that prejudice resulted. *Dows*, 211 F.3d at 487.

Petitioner cannot make such a showing here. The Court is not persuaded that the lurid details of Jackson's conviction for lewd conduct would have been admissible to impeach him under Idaho Rule of Evidence 609(a), and the extent to which he may have exaggerated his military service and his mental condition is less than clear. Jackson testified that he had been in the Vietnam War, which Petitioner does not contest, and he implied that his experiences in combat resulted in post-traumatic stress disorder, which Petitioner now asserts is untrue. Petitioner's contention in this respect is based on second-hand evidence of uncertain reliability, some of which did not even exist until long after this trial. In any case, the probative force of calling into doubt Jackson's offhand boasts about these tangential matters would have been minimal.

In short, Petitioner has not shown that if this claim were properly raised, he would be entitled to an evidentiary hearing.

**MEMORANDUM ORDER - 9**

5.  Intoxication and Mental Illness – Claim 18(l)(m)(n)

Petitioner next alleges that trial counsel was ineffective in failing to request a "proper" jury instruction on voluntary intoxication. The trial court gave the following instruction:

> Our law provides that "no act committed by a person in a state of voluntary intoxication is less criminal by reason of his having been in such condition."
> In both the crimes charged in this case and the fact that the defendant was voluntary intoxicated, if such fact you should find, is not a defense and does not relieve him of criminal responsibility.

(R., Vol. II, p. 542.) This instruction was correct so far as it went, but it omitted additional language from Idaho Code § 18-116 as it then existed:

> But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.

Idaho Code § 18-116 (1987).[3]

Bishop objected to the trial court's instruction, but not on the grounds that it omitted the additional language. Rather, he contended that the instruction was a "comment on some minimal amount of evidence," and that "any evidence of intoxication is minimal to the case." (Tr. Vol. IV, pp. 654-55.) The trial court overruled this

---

[3] This statutory provision was amended in 1997 so that a jury could no longer consider whether a defendant's voluntary intoxication negated the mental state necessary for the offense. *See* 1997 Idaho Sess. Laws, ch. 53, § 1.

**MEMORANDUM ORDER - 10**

objection.  When counsel was asked about this subject during his recent deposition, he recalled that mental illness and intoxication ran in tandem to a certain degree, but he could not recall why he objected or failed to request a different instruction.  (Bishop Depo., pp. 79, 101-02.)

This Court concludes that Petitioner has not made out a colorable claim of either deficient performance or prejudice.  He has not come forward with facts to rebut the presumption that Bishop made a reasonable strategic decision at trial to downplay Petitioner's use of alcohol.  Additionally, while there was some evidence in front of the jury that Petitioner had been drinking on the night of the murders, there was no evidence that he was so grossly intoxicated that he could not form the mental state required to commit murder.  Thus, even if trial counsel had requested a different instruction, or an instruction that more closely tracked the statutory language, Petitioner would be unable to show a reasonable likelihood that the jury would have acquitted him or convicted him of lesser offenses.

In a related claim, Petitioner contends that Bishop was ineffective in not developing expert testimony at trial on the interaction between alcohol and mental illness, similar to the testimony that Dr. Estess provided at the sentencing hearing.  For the same reasons, this claim also does not merit further development at a hearing.  The record supports that trial counsel made a strategic decision during the trial to minimize the evidence of alcohol use, and Petitioner has not established that if Dr. Estess had presented

**MEMORANDUM ORDER - 11**

the same generalized testimony on this subject during the guilt phase, there is a reasonable probability that the jury would have returned a different verdict.

Finally, Petitioner claims that Bishop failed to request "standard" instructions on mental illness and act and intent in accordance with the Idaho Code. Petitioner has not explained how the trial court's instructions departed from Idaho law, or in what way the instructions were prejudicially improper. This claim is conclusory and does not require a hearing.

### 6. Failure to Move to Set Aside the Verdict – Claim 18(s)

Petitioner next alleges that Bishop was deficient in failing to move to set aside the jury's verdict on the grounds that the indictment and the verdict form lacked the word "deliberation," an element of first-degree murder.

As this Court has noted elsewhere, *see* Docket No. 234, p. 20; Docket No. 257, pp. 10-11, the indictment alleged, in part, that Petitioner committed two willful, intentional, and premeditated killings with malice aforethought, and the jury was instructed that it was required to find both deliberation and premeditation to support guilty verdicts of first-degree murder. (State's Lodging A-2, p. 538.) By any fair and reasonable construction, the indictment charged first-degree murder under Idaho law and the jury found all of the elements of that crime beyond a reasonable doubt. This claim is not colorable.

**MEMORANDUM ORDER - 12**

B.   Sentencing Claims

1.   Mitigation Investigation, Preparation, and Presentation – Claim 18(a)(f)(i)(j)(k)(m–as it relates to sentencing only)

By the time of Petitioner's sentencing hearing in 1989, it was clear that defense counsel in a capital case had a duty to investigate thoroughly a defendant's background and character in preparation for the penalty phase. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Evidence of the defendant's social background and mental health is significant, as there is a "belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Douglas v. Woodford*, 316 F.3d 1079, 1090 (9th Cir. 2002) (quoting *Boyde v. California*, 494 U.S. 370, 382 (1990)).

At his deposition in this proceeding, Bishop admitted that he did not understand the wide scope of potential mitigating evidence. Indeed, he conceded that as a general rule he did not conduct a full investigation into a defendant's background, including inquiries into childhood abuse or other developmental problems:

> Well, you know, what you appear to be asking is "did we do any mitigation?" The answer is, "No, we didn't know what mitigating evidence was."
> We would take the criteria of sentencing, and we would take the information that needed to be presented in the Presentence Report and anything good we could find out about our clients, and present it to the Court.

**MEMORANDUM ORDER - 13**

> But we did not delve into his educational handicaps, into his mental handicaps – generally, typically – the fact that he was abused. In fact, if we could keep abuse from the Judge back before Beam we would because Beam it did come back to kill us – kill him.

(Bishop Depo., p. 36.)

Bishop's investigator also claimed that they did not treat a capital case differently than a non-capital case in terms of pre-sentencing preparation. (Johnson Depo., pp. 15-16.) He did not recall meeting or interviewing any witnesses for the sentencing hearing in this case. (Johnson Depo., p. 58-59, 68, 70.)

Given these admissions, this Court concludes that Petitioner has alleged facts that, if proved, would likely demonstrate that trial counsel's investigation and preparation of the mitigation case fell below an objective standard of reasonableness. *Wiggins*, 539 U.S. at 524.

Whether Petitioner can show prejudice presents a much closer call, however, as a large portion of Petitioner's offer of proof, particularly evidence of mental illness, was already well-developed and before the state court for sentencing purposes. To counter this, Petitioner suggests that the mitigation case was incomplete and that Bishop did not discover evidence of a family history of alcoholism and abuse, Petitioner's other traumatic childhood events and injuries, and Petitioner's extreme social ostracization. He also contends that Bishop failed to offer a coherent story that wove together Petitioner's social history and mental illness into a compelling mitigation case, and that Bishop was

**MEMORANDUM ORDER - 14**

not adequately prepared to rebut the State's arguments in aggravation, especially the prosecutor's claims that Petitioner was faking his mental illness.

After reviewing Petitioner's offer of proof and the state court record, the Court cannot conclude as a matter of law that Petitioner will be unable to show prejudice. As in *Hoffman v. Arave*, 236 F.3d 523, 536 (9th Cir. 2001), Petitioner will be allowed to develop his evidence at a hearing so that the Court can then assess the strength of the defense case that he now claims should have been presented at sentencing.[4]

### 2. The Presentence Interview – Claims 5 & 18(e)(g)

Petitioner claims that Bishop's failure to attend the presentence interview, advise Petitioner of his rights, or object to the introduction of his statements amounted to ineffective assistance. The Ninth Circuit has held that a presentence investigation by a state official in a capital case is a critical stage of the proceedings such that a defendant has the right to have the assistance of counsel. *Hoffman*, 236 F.3d at 539. Accordingly, the Court concludes that the evidentiary hearing shall also include this claim of ineffectiveness as well as the related Claim 5. The Court expects that the parties will be

---

[4] However, the scope of the hearing will not include sub-claim 18 (h), in which Petitioner contends that counsel should have objected and requested a continuance after the judge commented that this case was unlike any other in which he had been involved because there was no connection between Petitioner and his victims.
    At his deposition, Bishop testified that he did not object to this comment because he did not want to upset the judge. (Bishop Depo., pp.78-79.) This was a reasonable tactical decision. Moreover, the judge's comment was an obvious one based upon the facts before him; he did not need to resort to undisclosed facts from other cases. In any event, a judge may bring his or her past experiences to each case. *Barclay v. Florida*, 463 U.S. 939, 950 (1983). For these reasons, there is no need to develop additional evidence on this claim.

**MEMORANDUM ORDER - 15**

able to stipulate to certain facts relevant to these claims, leaving only legal argument. (*See, e.g.*, Deposition of Betty L. Davis, pp. 16-17, 31-32.)

## IV.

## CONCLUSION

An evidentiary hearing shall be conducted on Claims 1, 5, 11, and those aspects of Claim 18 that cover trial counsel's failure to investigate and present competency issues (sub-claims (b)(d)), and trial counsel's representation during the penalty phase of the case (sub-claims (a)(e)-(g)(i)-(k)&(m)(sentencing only)).  The scope of the hearing shall not include any other allegations or claims.

## V.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that an evidentiary hearing is set for December 4, 2006, at 1:30 p.m. at the United States Courthouse in Boise and will continue for five consecutive days.  The Court will issue a separate order containing pre-hearing deadlines.

DATED: **June 29, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 16**